# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:05cv273

| | |
|---|---|
| LYLE FRONING, ) | |
|                Plaintiff, ) | |
| Vs. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| TOYOTA MOTOR SALES, U.S.A., INC., ) | |
|                Defendant. ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#18), which is supported by exhibits (#19), and a Memorandum of Law (#18). Defendant filed and electronically served its motion on April 13, 2006, making plaintiff's response to such motion due to be filed no later than May 1, 2006. As of May 8, 2006, no response has been filed, and this matter is now ripe for disposition.

**FINDINGS AND CONCLUSIONS**

**I.     Background**

In this action, plaintiff contends that two flat tires he experienced on his 2004 Toyota Tundra pickup truck are attributable to manufacturer defects and that damages to the truck were caused by one of these flat tires.

Plaintiff alleges and has testified that the first flat tire (rear passenger side) occurred while he was in the parking lot of a Wal-Mart on August 1, 2004. Froning Depo., at 18-21. Upon examination, plaintiff testified that he observed a two-to-three inch break in the tread between ridges. Id., at 23-24. The following day he took the deflated tire to the dealership, where he was told that the Toyota warranty does not cover tires. Id., at 30-31. Plaintiff

-1-

testified that he then took the tire to the "Tire Barn," but that the store could not tell him what caused the break, and the tire barn then disposed of the tire. Id., at 26-30.

The second flat tire (front passenger side) occurred on November 20, 2004, while plaintiff was driving on State Highway 75, North of Helen, Georgia. Id., at 39-40. Plaintiff testified that he heard air release from this tire as his truck went off the right side of the road and down a steeply pitched ditch. Plaintiff testified that when this happened, the steering wheel of the vehicle would not turn when he attempted to steer up and out of the grade, and the passenger side of the vehicle struck the base of the mountain, damaging the passenger side of his truck. Id., at 39, 44-46, 50-51, 57, 104-05, 156. Plaintiff has not alleged any personal injury. After the accident, plaintiff observed that the tire had separated from the rim, which he contends occurred while the vehicle was still on the road. Id., at 44-45, 59, 66.

Plaintiff has alleged a number of theories as to why he believes Toyota is responsible for the flat tires and the damage to his vehicle.

In his Amended Complaint, plaintiff first contends the flat tires and the ensuing crash with the second was caused by a defective lower ball joint, which was supposedly the subject of a recall on or about May 17, 2005. Defendant has, undisputedly, shown that plaintiff's vehicle was not subject to that recall as it was not in the "recall population." Affidavit of Robert Landis, Docket Entry 19, at Ex. C.

Plaintiff proffered two additional theories, based on his own specualtion, at his deposition which are not contained in his pleadings: that the second tire released from the rim because it was not properly mounted by Toyota; and that the vehicle had a steering defect. Froning Depo., at 66-68, 103-05, 156.

Finally, plaintiff has testified that he is not a tire expert. The only expert plaintiff has designated in accordance with Rule 26(a)(2), Federal Rules of Civil Procedure, is a

representative of Jan Davis Tire Store, Inc., in Asheville, North Carolina.[1] Mr. Davis has averred, however, that neither he nor any of his employees have been retained as an expert in this matter. Affidavit of Jan Davis, Docket Entry 19, Ex. E, at ¶¶ 6 &7. It would appear that the only evidence from Mr. Davis is that on April 11, 2005, plaintiff brought the tire into Mr. Davis's store, and Mr. Davis put on a new valve stem and re-inflated the tire without problem, charging plaintiff $6 for the repair. Id., at ¶ 4 & attachment thereto (invoice).

As to the non-alleged but testified to steering defect, plaintiff has no expert witnesses,[2] Froning depo., at 142, but testified that the steering "froze" on the day of the accident and then again a year later while traveling on a steep incline. Id., at 103-05.

Defendant has submitted a great deal of evidence indicating that there was no defect in plaintiff's truck and that the cause of the tire separating from the rim was plaintiff's operation of such tire at low air pressure.[3] See Deposition of Thomas R. Giapponi, Docket Entry 19, at Ex. F. Eddie Osbourne, a District Operations Manager at Toyota, averred that

---

[1] For the limited purpose of the pending motion the undersigned has accepted Mr. Davis as an expert on the *patent* causes of tire deflation through judicial notice of his experience and reputation in selling and servicing tires in the Asheville community. There is no evidence now before the court that Mr. Davis is an expert on *latent* causation, such as what could be discovered through forensic examination of tires.

[2] Plaintiff attempted to designate as an expert the deputy who responded to his accident, Deputy Christopher Sill, a designation which has been objected to by defendant by a response (#21), to which plaintiff has neither filed a reply nor informed the court he did not intend to file a reply as provided by Local Rule 7.1. For the reasons stated in the Order resolving that motion, defendant's objection is sustained and the untimely and improper designation of such deputy as anything other than a fact witness is stricken. Further, defendant has undisputedly shown that Deputy Sill's inspection of the tire at scene revealed no evidence of any defect. Still Depo., at 31, 38-40.

[3] Mr. Giapponi testified as to each of his seven conclusions concerning the separation of plaintiff's tire from the rim. Of note, Mr. Giapponi testified the tire did not separate from the rim until it was off the paved surface because there were no striations or other marks on the aluminum alloy rim, and no damage to the tire, that would been present had the rim impacted the paved surface.

on December 10, 2004, he inspected plaintiff's vehicle and found no defects. Docket Entry 19, Ex. B. Robert Landis, a Technical Analysis Manager at Toyota, averred that on December 5, 2005, he inspected plaintiff's vehicle and found no signs of the conditions addressed by Toyota's recall of other Tundra vehicles for ball joint issues and further found no defect, damage, or evidence of repair to such ball joint. Docket Entry 19, Ex. C.

## II. Standard Applicable to Motions for Summary Judgment

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addition to the duty Local Rule 7.1 imposes on a party to respond, plaintiff has a substantive duty under Rule 56 to come forward in response to defendant's motion with specific facts showing this court that there is a genuine issue for trial. Fed.R.Civ.P. 56(c).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a

reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

In this case, plaintiff has failed to respond to the dispositive motion. Where a party fails to respond to a motion for summary judgment, the standard is equally clear:

> Section (c) of Rule 56 requires that the moving party establish, in addition to the absence of a dispute over any material fact, that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. This duty of the court is restated in section (e) of the rule, providing, "if the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added).

Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). See also Meyer v.

Qualex, Inc., 388 F.Supp.2d 630 (E.D.N.C. 2005).

**III. Discussion**

    **A. Plaintiff's Claims**

Based on the two flat tires, plaintiff has asserted the following claims: (1) "First Claim for Relief: New Motor Vehicles Warranties Act"; (2) "Second Claim for Relief: Breach of Warranties and Revocation of Acceptance"; (3) "Third Claim for Relief: Negligence"; (4) "Fourth Claim for Relief: Unfair and/or Deceptive Trade Practices"; (5) "Fifth Claim for Relief Magnuson-Moss Warranty Act"; and (6) "Sixth Claim for Relief Punitive Damages." Each claim, and whether a genuine issue of material fact remains for trial, will be discussed *seriatim*.

    **B. First Claim for Relief: New Motor Vehicles Warranties Act**

The North Carolina *New Motor Vehicles Warranties Act* is codified as Chapter 20-351 *et seq.* of the North Carolina General Statutes, and provides in relevant part as follows:

> When the consumer is the purchaser or a person entitled by the terms of the express warranty to enforce the obligations of the warranty, if the manufacturer is unable, after a reasonable number of attempts, to conform the motor vehicle to any express warranty by repairing or correcting, or arranging for the repair or correction of, any defect or condition or series of defects or conditions which substantially impair the value of the motor vehicle to the consumer, and which occurred no later than 24 months or 24,000 miles following original delivery of the vehicle, the manufacturer shall, at the option of the consumer, replace the vehicle with a comparable new motor vehicle or accept return of the vehicle from the consumer . . . .

N.C.Gen.Stat. § 20-351.3(a). "The purpose of Article 15A is to provide remedies against manufacturers for persons injured when new motor vehicles fail to conform to express

warranties." Alexander v. DaimlerChrysler Corp., 2004 WL 179369, *3 (N.C.Super. 2004).[4] Inasmuch as the Act imposes on a manufacturer the duty to "conform the motor vehicle to any express warranty," N.C.Gen.Stat. § 20-351.3(a), in order for a plaintiff to be entitled to recover under the North Carolina Act, it is the plaintiff's threshold burden of showing that he has experienced a problem that is covered by the manufacturer's warranty.

### 1. Tires Not Covered By Toyota's Warranty

According to the undisputed affidavit of Eddie Osbourne, Toyota specifically excludes tires from its express warranties and informs the consumer that the tires are warranted by the tire manufacturer, in this case Bridgestone/Firestone. Because the tires are specifically excluded from the Toyota warranty, they cannot form the basis of a claim under the North Carolina Act. Finding no genuine issue of material fact warranting trial, the undersigned will recommend that summary judgment be granted in favor of defendant on this claim.

### 2. Ball Joint / Steering Defect

Plaintiff did not plead in his Complaint that defendant violated the New Motor Vehicles Warranties Act by failing to fix a defect with the ball joint or steering mechanism. Instead, plaintiff made such allegations during his deposition, but did not follow up those allegations with a motion to again amend his Amended Complaint. See Froning Depo., at 88, 103, 156. Plaintiff has retained no expert to provide competent evidence on these contentions, and the only evidence the court has before it is plaintiff's own speculation, which does not suffice on summary judgment. Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale

---

[4] Due to the limits of electronic filing, copies of unpublished opinions are incorporated into the docket by reference to the Westlaw citation.

v. Hardy, 769 F.2d 213, 214 (4th Cir.1985), and "[m]ere unsupported speculation ... is not enough to defeat a summary judgment motion." Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir.1995). In St. Clair v. Gen. Motors Corp., 10 F.Supp.2d 523 (M.D.N.C. 1998), the district court found that a plaintiff's claim of an automotive defect, that was unsupported by expert testimony, could not survive summary judgment because it was supported by mere conjecture and belief. Id., at 531-33.

Counterposed to plaintiff complete lack of competent evidence is the defendant's overwhelming evidence from experts who actually inspected the vehicle. Not only is the vehicle not subject to the ball joint recall, defendant's experts' opinion undisputedly indicate that there are no defects in the steering mechanism or the subject ball joint. The undersigned will, therefore, recommend that summary judgment be granted to defendant as to these claims inasmuch as they were asserted during the plaintiff's deposition.

### C. Second Claim for Relief: Breach of Warranties and Revocation of Acceptance

#### 1. Breach of Warranties

In this claim, plaintiff asserts a products liability claim based on alleged breach of implied and express warranties. Where a products liability claim is based on the expressed warranty of the manufacturer, it is plaintiff's burden to present evidence upon which a finder of fact could determine the following essential elements in his favor:

> A products liability claim grounded in *warranty* requires the plaintiff prove (1) the defendant warranted the product (express or implied) to plaintiff, (2) there was a breach of that warranty in that the product was defective at the time it left the control of the defendant, and (3) the defect proximately caused plaintiff damage.

Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 138 N.C.App. 70, 75 (2000)(citations omitted; emphasis in original). The claim for products liability based on the tires fails the first element because defendant expressly excluded the tires from its warranty, the second element

because plaintiff has shown no defect, and the third element because plaintiff has shown no damage attributable to any defect. As to plaintiff's implicit claims for the ball joints and steering fail, these fail the second and third elements inasmuch as plaintiff has made neither a showing of any defect nor damage proximately caused by any defect.

Where a plaintiff fails to produce direct evidence of a defect in a breach of warranty claim, North Carolina courts hold that a plaintiff can utilize an alternative proof scheme, which allow a defect to be inferred through "circumstantial evidence showing that the product malfunctioned when put to its ordinary use." Carlton v. Goodyear Tire & Rubber Co., 413 F.Supp.2d 583 (M.D.N.C. 2005), citing Dewitt v. Eveready Battery Co., Inc., 355 N.C. 672, 684 (2002). Under this standard, it is plaintiff's burden to produce circumstantial evidence establishing a "sufficient probability" rather than a "mere possibility or speculation" to support an inference of product defect. Id., at 590. Six factors are utilized by courts in making such determination, and include:

(1) evidence that the product malfunctioned;
(2) expert testimony as to possible causes of malfunction;
(3) the amount of time that passed between plaintiff getting the product and the occurrence of th malfunction;
(4) similar accidents experienced by others with the same product;
(5) evidence eliminating other causes of the malfunction or accident; and
(6) proof that the malfunction does not happen unless a defect is present.

Id.

### a. Malfunction

As to malfunction, at most, the evidence indicates that plaintiff experienced a blow out and that the tire separated from the rim. This is not substantially different than the claim the Middle District address in Carlton, wherein the district court found that "evidence of a blowout . . . would not alone constitute sufficient circumstantial evidence to infer a product defect," but that such evidence was sufficient to merit "considering the other DeWitt

factors." Id. The undersigned will likewise find that evidence of a blowout and separation from the rim merits consideration of the other factors.

### b. Expert Testimony of Possible Causes

The only expert testimony in this case is from defendant's experts, all of whom opine that there was in fact no defect. Mr. Giapponi opined that the separation occurred after the tire left the paved surface, and there is no competent expert evidence to dispute his finding. Inasmuch as plaintiff has proffered no expert testimony, plaintiff's burden of providing sufficient circumstantial evidence is " much harder." Id., at 591. This factor weighs in defendant's favor.

### c. Temporal Proximity Between the Accident and the Purchase of the Product

The undisputed evidence is that plaintiff had driven the truck for approximately five months and 12,500 miles after the purchase and before the accident. In Carlton the court found that 2,000 miles of driving on new tires was "substantial" and increased the likelihood that the failure was caused by an external factor rather than a manufacturing defect. Id. The undesigned finds the logic of Carlton to be even more compelling in this case inasmuch as plaintiff had driven on such tires six times further than in Carlton. This factor weighs in defendant's favor.

### d. Evidence of Similar Problems

Plaintiff has presented no statistical evidence of other consumers experiencing similar problems with the 2004 Toyota Tundra truck. This factor weighs in defendant's favor.

### e. Elimination of Other Possible Causes of the Accident

As did the Carlton court, the undersigned takes notice that there are a number of possible causes of a blowout of a tire on a vehicle. Besides product defect, there is puncture from striking an object either seen or unseen in the roadway, overinflation of a tire, and

underinflation of a tire. In this case, plaintiff testified that he did not run over any debris prior to the blow out and there is no evidence from plaintiff concerning the air pressure in that tire on the day of the accident. While plaintiff can certainly testify that he did not see or was not aware of any debris in the roadway, that does not eliminate the possibility of a road hazard. Mr. Giapponi even opined that the tire separating from the rim was consistent with operation of the tire at low air pressure. Thus, plaintiff has not eliminated other possible causes of the blow out. This factor weighs in favor of defendant.

### f. Circumstantial Evidence that Blow Outs Do Not Occur Absent Defects

While blow outs may certainly be caused by defective tires, there has been no evidence presented by way of experts or others that blow outs are only caused by defects. Indeed, the firm which plaintiff designated as its tire expert found no defect in plaintiff's right front tire, and simply re-inflated the tire and added a new valve stem. Indeed, common sense tells this court that no such competent evidence could exist inasmuch as blow outs occur everyday based on a number of reasons. This factor weighs in favor of defendant.

\* \* \*

Having considered both direct and circumstantial evidence, the undersigned must recommend that summary judgment be granted in favor of defendant on plaintiff's breach of warranties claim.

### 2. Revocation of Acceptance

Plaintiff has also a claim under the Uniform Commercial Code based on revocation of acceptance. Chapter 25-2-608 of North Carolina's UCC provides that a buyer may revoke his acceptance of a good whose nonconformity substantially impairs th value of the good to the buyer. N.C.Gen.Stat. § 25-2-608. By failing to establish any defect with the vehicle, plaintiff also fails to establish "nonconformity" under the UCC. The undersigned will,

therefore, recommend that defendant be granted summary judgment on this aspect of the Second Claim for Relief.

### D. Third Claim for Relief: Negligence

Plaintiff's claim for negligence is precluded as a matter of well-settled North Carolina law under the "Economic Loss Rule." Such rule provides that a purchaser of an allegedly defective product is prohibited from bringing a negligence action against the product's manufacturer when the alleged damage is limited to the product itself. Wilson v. Dryfit Systems, Inc., 206 F.Supp2d 749, 753 (E.D.N.C. 2002). Plaintiff has alleged no injury except to the vehicle itself and has not otherwise countered defendant's invocation of the Economic Loss Rule. The undersigned will, therefore, recommend that defendant be granted summary judgment on the Third Claim for Relief.

### E. Fourth Claim for Relief: Unfair and/or Deceptive Trade Practices

A state-law claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977) In response to a decision of the North Carolina Supreme Court in Edmisten, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated . . . ." Id.

The UDTPA is, without doubt, a law regulating conduct between buyers and sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). See also Liggett Group, Inc. v. Sunas, 113 N.C. App. 19, 31 (1993); Buie v. Daniel Int'l, 56 N.C. App. 445, 448, cert. denied, 305 N.C. 759 (1982). To state a cause of action under the UDTPA, plaintiff must allege and in response to a motion for judgment present evidence upon which a reasonable jury could find in his favor on each of the following elements:

(1) conduct constituting an "unfair or deceptive act or practice;"

(2) conduct "in or affecting commerce," and

(3) that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996). The undersigned has reviewed the pleadings as to each element.

According to plaintiff's deposition testimony, this claim is based on contentions that he was promised a free oil change by the dealer when the car was sold to him, Froning Depo., at 91-92, and his belief that the vehicle inspection by one of defendant's experts occurring on December 10, 2005, never happened because the tire that was part of such inspection was returned to him in the condition it was received, i.e., muddy. Froning Depo., at 76-79, 152-54.

First, plaintiff has not sued the dealership and has utterly failed to show how a promise of a complimentary first oil change can transmogrify itself into a claim under the UDTPA. Second, plaintiff's theory that the December 10, 2004, vehicle inspection never occurred is pure speculation, and, in any event, plaintiff has failed to show how such alleged non-inspection of a vehicle plaintiff has failed to show was in any manner defective can be considered to be unfair or deceptive inasmuch as he has failed to show how such alleged act "proximately caused actual injury to plaintiff." Food Lion, supra. The undersigned will,

therefore, recommend that defendant be granted summary judgment on the Fourth Claim for Relief.

**F.     Fifth Claim for Relief: Magnuson-Moss Act**

Plaintiff has failed to show, in any manner, that defendant has failed to honor its obligations under the express warranty provided by Toyota, or any warranties implied at law, as discussed at length above. In paragraph 44 of the Amended Complaint, plaintiff alleges that Toyota failed to "comply with its obligations under the [Magnuson-Moss] Act and Plaintiff's warranties, both express and implied." Complaint, at ¶ 44. Plaintiff was unable to give any basis for this claim at his deposition, and his counsel objected to such line of question because it "calls for a legal conclusion." Froning Depo., at 154-55. No indication has been provided to this court as to which of the "obligations" of the Magnuson-Moss Act defendant failed to comply. See 15 U.S.C. § 2310. The undersigned will, therefore, recommend that defendant be granted summary judgment on the Fifth Claim for Relief.

**G.     Sixth Claim for Relief: Punitive Damages**

Defendant has also moved for summary judgment on plaintiff' "cause of action" for punitive damages. As a matter of state law, "punitive damages" is not a cause of action, but is instead a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

Combs & Associates, Inc. v. Kennedy, 147 N.C.App. 362, 374 (2001) (citation omitted).

-14-

Further, it appears that

> Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

Phillips v. Restaurant Management of Carolina, L.P., 146 N.C.App. 203, 215- 16 (2001) (citation omitted). In North Carolina, the aggravating factors that will justify imposition of punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton conduct." N.C. Gen.Stat. § 1D-15(a). Finding that plaintiffs cannot assert punitive damages as an independent cause of action, the undersigned will recommend that such claim be dismissed as non-justiciable. To the extent the district court may consider such to be an actual cause of action, the undersigned will alternatively recommend that such be dismissed for plaintiff's failure to first show that he is entitled to compensatory damages or to produce evidence in any regards indicating any fraud, malice, or willful or wonton conduct by defendant. The undersigned will, therefore, recommend that defendant be granted summary judgment on the Sixth Claim for Relief

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion for Summary Judgment (#18) be **ALLOWED,** and that summary judgment be granted in favor of defendant and against plaintiff on all claims.

Signed: May 8, 2006

*Dennis L. Howell* (signature)

Dennis L. Howell
United States Magistrate Judge 

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).